Kenneth L. Neeley, 025899
Geoffrey M Khotim, 019513
Karen G Bentley, 034148
Nicholas T Van Vleet, 026933
**Neeley Law**
1120 S. Dobson Rd., Ste. 230
Chandler, Arizona 85286
Tel: 480.802.4647 | Fax: 480.907.1648
ECF@neeleylaw.com
*Attorneys for Plaintiff(s)*

Daniel J Ciment, 24042581
Ciment Law Firm, PLLC
221 Bella Katy Dr.
Katy, TX 77494
Tel: 833-663-3289
Daniel@cimentlawfirm.com
*Co-Counsel for Plaintiff(s)*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In Re:<br>JAMES MARVIN DODD and<br>MAIDA TUGANO DODD,<br>   Debtor.<br>JAMES MARVIN DODD,<br>   *Plaintiff*<br>v.<br>NAVIENT;<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST;<br>TRANSWORLD SYSTEMS, INC.;<br>and U.S. DEPARTMENT OF EDUCATION<br>   *Defendant(s)*. | **CASE NO.: 16-34842**<br><br>**CHAPTER 13**<br><br><br><br><br>**Adversary Case No.: _____** |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF AN ALLEGED STUDENT LOAN DEBT PURSUANT TO 11 U.S.C. § § 523(a)(8)

COMES NOW, Plaintiff, JAMES MARVIN DODD, by and through undersigned counsel, and complains of the Defendants, NAVIENT, NATIONAL COLLEGIATE STUDENT LOAN TRUST, TRANSWORLD SYSTEMS, INC., and U.S. DEPARTMENT OF

EDUCATION. Plaintiff is seeking to Determine the Dischargeability of Loans which are held by the Defendants. Plaintiff respectfully alleges as follows in support of this Complaint:

### I. INTRODUCTION

On September 29, 2016, Plaintiff filed a voluntary petition (the "Petition") for bankruptcy relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. On November 9, 2016, the Plaintiff's duly noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Meeting of Creditors"). On November 9, 2021, the Court granted Plaintiff a discharge pursuant to the Order of Discharge (the "Discharge"). This is an adversary proceeding in which Plaintiff seeks a determination as to the dischargeability of the debt owed by the Plaintiff to the Defendant under Bankruptcy Code § 523(a)(8).

### II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding and for Injunctive and Declaratory relief pursuant to 28 U.S.C. § 1331, 1334 and 1337(a), 28 U.S.C. § 2201-2202, FRBP 4007, and 11 U.S.C. § 523. The Court has the authority to enter a final order regarding this contested matter because it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (E), (G), (I), (J), and (O). Pursuant to Sections 1408, 1409, and 1391(b) of Title 28 of the United States Code, venue is proper in this district/division.

### III. PARTIES

2. The Plaintiff is JAMES MARVIN DODD.

3. The Defendants are NAVIENT, NATIONAL COLLEGIATE STUDENT LOAN TRUST, TRANSWORLD SYSTEMS INC., and the U.S. DEPARTMENT OF EDUCATION. The Defendants hold, guarantee, or service debt incurred by the Plaintiff. NAVIENT may be served by serving its president, officer or director at 123 Justison Street, Wilmington, DE 19801. NATIONAL COLLEGIATE STUDENT LOAN TRUST may be served by serving its

president, officer, or director in care of Wilmington Trust Company, Rodney Square North, 1100 North Market Street, Wilmington, DE 19890. TRANSWORLD SYSTEMS, INC. may be served by serving its president, officer, or director Joseph E Laughlin CEO, PO Box 15630, Wilmington, DE, 19850, and their registered agents The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. THE U.S. DEPARTMENT OF EDUCATION may be served by serving the U.S. Secretary of Education, Miguel Cardona, at 400 Maryland Ave. SW, Washington DC 20202, Attorney General Merrick B. Garland at U.S. Department of Justice, 950 Pennsylvania Ave NW, Washington DC, Acting U.S. Attorney Chad Meacham at 1100 Commerce Street, Suite 300, Dallas, TX 775242, and Assistant U.S. Attorney – Fort Worth Division, Burnett Plaza, Suite 1700, 801 Cherry Street, Unit 4, Fort Worth, Texas 76102.

### IV. Factual Allegations

4. Plaintiff attended the Houston Community College from 2002 to 2010 during which time he applied for and received loans from TX Guaranteed Student Loan Corp/ Navient/ Deutsche Bank ELT Navient & SLM Trusts.

5. Plaintiff attended the Prairie View Agricultural & Mechanical University from 2008 to 2012 during which time he applied for and received loans from the Department of Education/Nelnet.

6. The loans obtained in February 2002 to August 2007 were consolidated in 2007 and again in 2012, prior to Plaintiff's bankruptcy filing.

7. The Loans, as originally made by Defendants, were made, insured, or guaranteed by a governmental unit. However, the entirety of these loans were not used as an educational benefit to Plaintiff.

8. The funds loaned to Plaintiff greatly exceeded the educational costs of attendance in the amount of $28,014.00.

9. Plaintiff used the entirety of the overage funds received from Defendants for living expenses with non-educational benefits.

10. Plaintiff's loan balances owed to US DOE as of the date of this complaint total $92,149.00

11. Plaintiff's student loan balances owed to Navient as of the date of this complaint total $64,892.00

12. Plaintiff worked for a time in his intended field. Plaintiff originally planned on working in his intended field until retirement repaying the entirety of his student loans.

13. Plaintiff is plagued with significant physical diagnoses including, but not limited to, hypertension, diabetes mellitus, hyperlipidemia, metabolic syndrome, non-alcoholic fatty liver disease and peripheral neuropathy which inhibit his ability to work.

14. Plaintiff is plagued with significant mental diagnoses including, but not limited to, depression and anxiety which further inhibit his ability to work.

15. Plaintiff continues to seek medical treatment for these diagnoses and will do so for the entirety of his life.

16. Plaintiff is physically and mentally unable to work in any capacity that would allow for the repayment of the loans.

17. Plaintiff has no reasonable expectation of earning a livable wage in the foreseeable future.

18. Plaintiff consistently made payments on the loans for over ten years reducing the amount due by only $8,239.61.

19. Plaintiff's student loan balance as of September 2022 is $157,041.00. This is higher than the original amount due.

20. Plaintiff's payments over ten years have made less than minimal progress towards paying off the balance of the debt.

21. Plaintiff faced significant financial hardships in the years leading to and following graduation. Debtor filed for Chapter 13 bankruptcy protection in 2016 to obtain relief and to retain a more sustainable financial situation.

22. Since the bankruptcy, Plaintiff's situation has not improved. Plaintiff has been unable to get ahead financially because of the alleged student loans.

## V.   CAUSES OF ACTION

### **CLAIM NOT EXCEPTED FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(8)**

23. Debtor repeats and re-alleges the allegations set forth in paragraphs 1 through 22 of this Complaint as set forth above.

24. 11 U.S.C. § 523(a)(8) provides, in relevant part, that:
    (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
    …
    (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
    (A)
    (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
    (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

25. Sections 221(d)(1) and (d)(2) of the Internal Revenue Code provide, in pertinent part, that:

    **(1) Qualified education loan**
    The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses—
    **(A)** which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
    **(B)** which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
    **(C)** which are attributable to education furnished during a period during which the recipient was an eligible student.
    …
    **(2) Qualified higher education expenses**
    The term "qualified higher education expenses" means the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution, reduced by the sum of—
    **(A)** the amount excluded from gross income under section 127, 135, 529, or 530 by reason of such expenses, and
    **(B)** the amount of any scholarship, allowance, or payment described in section 25A(g)(2).
    For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by section 25A(f)(2), except that such term shall also include an institution conducting an internship or residency program leading to a degree or certificate awarded

      by an institution of higher education, a hospital, or a health care facility which offers postgraduate training.

26. Section 25A(f)(2) of the Internal Revenue Code provides, in pertinent part, that:

      **(f)(2) Eligible educational institution**
      The term "eligible educational institution" means an institution—
      **(A)** which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of the enactment of this section, and
      **(B)** <u>which is eligible to participate in a program under title IV of such Act</u>.
      Emphasis added.

27. To the extent any portion of the Loans were not made, insured, or guaranteed by a governmental unit, or made under any program partially or fully funded by a governmental unit or nonprofit institution, such portion of the Loans are not excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(i).

28. The Loans in the present case are not excepted from discharge pursuant to §523(a)(8) because they are <u>not</u> "(1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; [or] (4) [a] 'qualified educational loan' as that term is defined in the Internal Revenue Code." <u>Id</u>.

29. Defendants grossly exceeded the necessary loan amounts given to Plaintiff for qualified educational purposes. Defendants overpaid the loans in the amount of $28,014.00. The total cost of attending Houston Community College and Prairie View A&M in the applicable years totaled $29,529.00. The US DOE lent $57,537.00 in total (not including interest) to Plaintiff. The overage amounts from US DOE were paid directly to Plaintiff who used the loan overages for everyday living expenses including rent, groceries, and medical care. None of these funds were used to finance any part of Plaintiff's education nor created any educational benefit for Plaintiff. The Consumer Financial Protection Bureau agrees that certain student loans are dischargeable in a bankruptcy, including any portion of funds higher than the cost of attendance. This is consistent with *McDaniel v. Navient Solutions*, No. 18-1445 (10th Cir. 2020) which provides "an educational loan did not constitute "an obligation to repay funds received as an educational benefit," within the meaning of 11 U.S.C. 523(a)(8)(A)(ii)." All of the funds used for any purpose other than education should, thereby, be dischargeable.

## UNDUE HARDSHIP UNDER 11 U.S.C. § 523(a)(8)

30. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 30 of this Complaint as set forth above.

31. Even if the Loans in the present case fall into one of the categories excepted from discharge, the Debtor still qualifies for discharge because repaying the loans would be an "undue hardship."

32. The Code does not define "undue hardship", but the Fifth Circuit Court of Appeals has adopted a three-part test for analyzing whether not discharging a debt would pose an "undue hardship" on the debtor. In *In re Gerhardt*, 348 F.3d 89 (5th Cir. 2003), the court adopted the three-prong test for evaluating "undue hardship" claims established by the Second Circuit in Brunner v. New York State Higher Education Service Corp., 831 F.2d 395 (2d Cir. 1987). To justify the discharge of student loan debt under this test, a debtor must prove:

(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [herself] and [her] dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans. Gerhardt, 348 F.3d at 91 (quoting Brunner, 831 F.2d at 396).

### Minimal Standard of Living

33. The first prong of the Brunner test requires that a debtor be unable to maintain a "minimal" standard of living if forced to repay the loans based on current income and expenses. "A debtor need not live in abject poverty before a discharge is forthcoming." *In re Hornsby,* 144 F.3d 433, 438 (6th Cir. 1998). The Plaintiff here has a minimal income. After necessary payroll deductions, Plaintiff and spouse take home $2,217.63 on a monthly basis. Combined household living expenses for the family of three are as follows:

> Prescriptions/Medications: $300.00
> Cell Phone (AT&T): $242.00
> Netflix: $17.00

      Insurance (Auto): $80.00
      Food & Groceries: $600.00 (approximate)
      Gas/Vehicle Upkeep: $480.00
      Storage Unit: $263.00
      Mandatory 403b Loan: $205.40

34. After all reasonable expenses are deducted, Plaintiff has $30.23 remaining each month.

35. Plaintiff took drastic measures to reduce costs and expenses including moving his family into his parent's home to minimize expenditures and cut down on the cost of living.

36. Plaintiff and his spouse share a vehicle to avoid unnecessary and additional transportation costs.

37. Plaintiff's expenses do not go beyond what is reasonable and necessary. There are no additionally feasible prospects for a reduction in expenses.

38. Plaintiff entered into a chapter 13 bankruptcy in 2016. Plaintiff's circumstances have not improved, and Plaintiff still struggles to meet his monthly bills. Plaintiff has no additional funds available to cover the loans. Thusly, the loans preclude Debtor from maintaining a minimal standard of living. The first prong of the Brunner test is satisfied.

## Additional Circumstances Indicating Conditions Will Persist

39. Under the second prong of the Brunner test, there must be additional circumstances that exist to indicate the state of affairs is going to persist for a significant portion of the repayment period of the student loans. Plaintiff's ability to increase his income is low to non-existent. Plaintiff is nearing complete disability due to his mental and physical conditions listed above.

40. It is far more likely Plaintiff's income will decrease considerably in the future. Plaintiff's medical conditions are persistent and degenerative. The chronic pain will increase and require additional treatment that will most likely inhibit his ability to work in any capacity.

41. It is highly unlikely Plaintiff's hardship will resolve within the repayment period but will, in fact, remain for a prolonged and indeterminate period far beyond the term of the loan. These circumstances create a certainty of hopelessness for Plaintiff as it is virtually impossible for Plaintiff to achieve the level of income required to be able to realistically repay the loans. The second prong of the Brunner test is satisfied.

**Good Faith Effort to Repay**

42. Under the third prong of the <u>Brunner</u> test, there must have been a good faith effort to repay the loans.  "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses," but the "debtor's failure to make a payment, standing alone, does not establish a lack of good faith." Mosley , 494 F.3d at 1327 (quoting ECMC v. Polleys (In re Polleys) , 356 F.3d 1302, 1311 (10th Cir. 2004) ), Graddy v. Educ. Credit Mgmt. Corp., 615 B.R. 336 (N.D. Ga. 2020).

43. Plaintiff's consistently makes a good faith effort to manage his loans.  Plaintiff continues to work despite his low quality of life and increasing chronic pain.  Plaintiff minimized his expenses by moving in with family and downsizing to only one vehicle.  Plaintiff took advantage of programs available to him to minimize the cost of his education and the resulting loans. This constitutes a good faith effort and the third prong of Brunner is satisfied.

**CONCLUSION**

44. Section 523(a)(8) is widely misinterpreted. It does not strictly prohibit the discharge of student loans.  It specifically states student loans may be dischargeable if certain criteria are met. A debtor's good faith in seeking relief is a premise of the powerful relief that bankruptcy offers—the opportunity of a fresh start enforced by an injunction barring creditors' collection efforts. See <u>In re Little Creek Dev. Co., 779 F.2d 1068, 1071 (5th Cir. 1986)</u> ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.") (citations omitted).   The Loans in this case are not protected from discharge. They are not qualified education loans, nor provided an educational benefit. Most importantly, the Plaintiff meets the standard of undue hardship, and the Loans should be discharged or significantly reduced on this ground.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order:

A. Finding that the Loans are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8);

  B. Finding that the Loans were discharged pursuant to 11 U.S.C. § 1328; and

  C. Granting any other and further relief as the Court deems just and proper.

DATED: November 2, 2022        **NEELEY LAW FIRM, PLC**

                */s Karen Bentley*
                Karen G. Bentley
                NEELEY LAW
                *Attorneys for Plaintiff*

                */s Daniel J Ciment*
                Daniel J Ciment
                Ciment Law Firm PLLC
                *Co-Counsel for Plaintiff*